(Pg3) - Question (9) f

Grounds raised:

Point One → The two step, Question-First interrogation technique which was used in this case -- where a defendant who is in custody is interrogated without Miranda warning -- clearly violated the defendant's State-Law right against compelled self-incrimination as well as his Fifth Amendment Right against self incrimination.

Point Two → William's Identification of defendant as the shooter should have been suppressed because the Identification procedure was impermissibly suggestive and resulted in a very substantial Likelihood of irreppurable misidentification ..

Point Three → Failed to instruct the jurors on lesser included offenses for Murder and conspiracy to commit murder, and defense counsel was ineffective in arguing that there was no basis for such an instruction

Point Four → Defendant's aggregate sentence of 40 years with an 85% period of parole ineligibility is manifestly excessive and requires a Remand

(Pg 4-) Question (11)·2- 5

Grounds raised:

Point One → Petitioner's assertion of state and Federal Constitutional Issues are not Barred by R 3:22 ET SEQ I. Petitioner asserts that his issues of ineffective assistance of counsel are not barred by R 3:22 et seq. and are entitled to an evidentiary hearing.

Point Two → Trial counsel failed to do any investigation prior to trial and as a result failed to call favorable witnesses.

Point Three → Petitioner was denied the effective assistance of Appellate counsel.

<u>Point Four</u>: The conviction is against the weight of the evidence.

<u>Point Five</u>: PCR counsel incorporates by reference all issues raised by petitioner in his petition.

<u>Point Six</u>: Petitioner was Deprived of his Constitutional Rights to the Effective Assistance of trial Counsel, contrary to Petitioner's U.S. Const. 6TH Amendment Rights ...

<u>Point Seven</u>: The Prosecutor's Misconduct was Clearly A Brady Violation in not sharing Crucial/Vital Evidence with Petitioner's Defense Team of The WAWA Convience Store Surveillance Tape, Contrary to Petitioner's U.S. Const. 14th Amendment Right And 6th Amendment Rights to A Fundamental Fair Trial with DUE Process/Equal Protection Right, Shielding ANY Deprivation, TO the contrary.

<u>Point Eight</u>: Trial Counsel Rendered Incompetence IN The Gross Failure To File For And Oppose Respondent Consolidation Motion Verses As Well Moving For Severance TO Rid Potential Prejudice Upon/Against Petitioner, Such As other Crimes Evidence, Contrary to <u>N.J.R.E</u> 404(B)

<u>Point NINE</u>: Petitioner's Appellate Counsel Render As Well, Remedial Ineffective Assistance OF Counsel For Failure TO Raise The Meritorious Claims Trial Counsel Failed TO Address, As Addressed Herein Petitioner's Prose Letter Petition, with the Exception of ineffective Assitance of Counsel.

<u>Point Ten</u>: Petitioner Extended term Must Be Reversed Because The Judge Failed To Setforth His Legal Statement Justifying The Imposition of Same And Using Cases That's Prohibited.

Point 11

Appellant's initial Appellant Counsel and PCR Counsel Remedial Assistance of Counsel as well Denial Appellant the right to Fairly and Adequately challenge the criminal Allegations to prove His Actual Innocence contrary TO THE U.S. Const. 6th Amendment $ N.J. Const. Art 1, 9, & 10..

Point 12

Appellant's Remedial Assistance of Counsel at the trial Lead to a Grave Denial of the U.S. Const 6th Amendment & N.J. Const. Art. 1, Para. 9 & 10 to a Fair Trial To Prove His Actual innocence.

Point 13

Jury's verdict and petitioner's conviction was against the weight of the evidence in violation of the Fourteenth Amendment.

Point 14

Judge Failed Duty as impartial Tribunal violating Defendant's Rights TO DUE Process and a Fair Trial..

(Pg 5)(b) (5) Grounds raised: Point(3) Appellants remedial assistance of counsel at the trial to grave denial of the U.S. Const. 6th Amendment & N.J Const. Art. 1, Para. 9 $10, to a fair trial to prove his actual innocence. Point(4) Appellant's initial Appellate counsel and the PCR counsel remedial Assistance of counsel as well Denial Appellant the right to fairly and Adequately challenge the criminal alligations to prove his Actual innocence contrary to the U.S const. 6th Amendment $ N.J Const art. 1, 9 & 10. Point(5) Prosecutor knowingly used prejured testimony to obtain conviction Denying Defendant's Right to a fair trial, Due Process and in Violation of the 5th Amendment to United States Constitution. Point(6) Jurys verdict and petitioner's conviction was against the weight of the evidence in violation of the Fourteenth Amendment. Point(7) Judge failed duty as impartial tribunal violating defendants Rights to Due Process and a Fair Trial.

(Pg 6) 12 (a)

Ground (1):

The two step, Question-first interrogation
technique which was used in this case -- where
a defendant who is in custody is interrogated
without Miranda warning - and then the
interrogation is repeated with warning
cleary violated the defendant's State-law
right against compelled self incrimination
as well as his Fifth Amendment right
against self incrimination.

(2) Supporting facts:

As a preliminary matter, it is evident that defendant
was in custody when interrogated by Detective
Whipple. Defendant was arrested on a homicide
warrant, handcuffed and transported to the
Somerset County Prosecutor's office for questioning-
all circumstances which would have indicated that
he was not free to leave. It was during this
interrogation that Detective Whipple implemented
the "question first / warn later" interrogation
"technique." Without giving defendant Miranda
warning, Detective Whipple told defendant
they were going to talk about "a little story
and this story begins Friday night" that this
story centers around you and that defendant
was in the "hot seat."

Detective Whipple then initiated the following
exchange, still without issuing Miranda warning,
Detective Whipple also told defendant that the
reason he was there because Brim "gave
everyone up" and that the police had "eyewitness
accounts." the following exchange still without Miranda.
[Det Whipple]: Um basically I, I'm not gonna
lie, the way, the way this is set up

right now is things on you right now, okay.
You, you're being charged right now with a
Homicide.
[Defendant]: Alright

[Det. Whipple]: Okay. But I, I have all these
stories, I have all these eye witness accounts
and stuff like that but that's them, I don't
have your tale of the story, you understand
what I'm saying. That's what basically what
I'm looking at.
[Defendant]: Alright

[Det. Whipple]: I need, this is gonna be our
only one opportunity to do that, okay. And if I
have an explanation of how you fit in another
way, shape or form, if you know, that that's
where we have to go. Okay, I need to know
that now alright, if it's contrary to what Mr.
Brim had to say about you.
[Defendant]: Defendant then responded "okay" and
"okay will let's get into it."
It was only then, after defendant had been convinced
to speak to police, that Det. Whipple read defendant
his Miranda rights.
Pg 8 Ground Two: William's indentification of defend-
ant as the shooter should have been suppressed
because the Identification procedure was impermissibly
suggestive and resulted in very substantial likelihood
of irreparable misidentification.

(a) Supporting facts:
Here, defense counsel argued at the Wade hearing
that the viewing of only two photographs in the
array of arguably "light skinned" black males,
only defendant had facial tattoos, rendered the
photo array unduly suggestive. Emphasizing
that the inclusion of a suspect's photo that

is grossly dissimilar to the other photographs in an array. Williams was in an agitated state at the time she witnessed the shooting, in the midst of an ongoing, heated argument with another individual; she failed to even report the shooting to police; she claimed to have heard six or seven shots, notwithstanding that all other witnesses and the autopsy report indicated that there was only one shot fired; and she had only a fleeting observation in questionable lighting conditions. In addition, although a standardized identification form was used to record the Identification, there was no separate police report detailing the circumstances of the Identification, its location, or what comments were made to williams before, during or after the Identification. Also Williams was drinking alcohol before she witnessed the shooting. Here, given William's description of the shooter, compiling a photo array with only one photograph out of six depicting an individual with facial tattoos.

(Pg 9) Ground Three : @ Supporting facts
The court Erred in failing to instruct the jurors on lesser included offenses for murder and conspiracy to commit murder, and defense counsel was ineffective in arguing that there was no basis for such an instruction.

(A) Supporting facts: Prior to giving it's charge, the court asked for both sides whether they were requesting a charge on any lesser included offense, and neither side requested such charges. Both agreed that this was an "all or nothing" case; either the defendant shot Love, in which case he would be guilty of all three counts of the indictment (murder, conspiracy to commit murder and possession of a weapon for an unlawful purpose), or he was not present at Teri's Enough

Bar that night, in which case he would not be guilty of these three counts. The court, after hearing from counsel, decided not to charge any lesser-included offenses. After five days of deliberations, the jury indicated that it had a partial verdict, which the court accepted over defense objection. The jury was deadlocked on the murder and weapons counts but found defendant guilty of conspiracy to commit murder. Here, there was a middle ground, which was incorrectly rejected by defense counsel and the court. The jury could have found, on these facts, that defendant acted recklessly "under circumstances manifesting an extreme indifference to human life," as required for aggravated manslaughter, or recklessly as required for manslaughter. The jury also could have found defendant guilty of aggravated assault or conspiracy to commit aggravated assault, in that defendant's intention had been for Love to be beaten up but not killed. Trial counsel's failure to request the lessor included charges led the court to reject such charges, and created an all-or-nothing situation.

(Pg 11) Ground Four:

(a) Supporting facts: Defendant was sentenced as a persistent offender on Indictment Number 08-06-00348, conspiracy to commit murder, to an extended term of 25 years with an 85% period of parole ineligibility. In addition, defendant was sentenced on Indictment Number 10-03-00168, conspiracy to commit murder, to three 15 years terms, concurrent to each other but consecutive to the 25 years. Because the length of the extended term and the length of the base term are manifestly excessive, defendant urges the court to vacate the sentence. A focus on the offense is even more necessary when an extended sentence is imposed; the defendant criminal record is

already taken into account in determining eligibility for an extended sentence and should not be double-counted under these principles, a defendant who qualifies for an extended term based on his prior record should not have his prior record counted again to justify a maxium sentence.

In defendant case, he qualified for an extended term based on three prior indictable convictions, all of which occurred were CDS. Yet, when one considers that these priors provided the basis for the imposition of an extended term and then again provided the basis for finding aggravators three, six, and nine, the trial courts reliance on defendants record to impose a 40 year aggregate term.

Futhermore, although the court found no mitigating factors applicable, it also didnt note any facts about this case that were so egregious as compared to other offense of its kind as to warrant the maximum sentence.

Ground Five:

Petitioner's assertion of State and Federal Constitutional issues are not barred by 3:22 ET SEQ. and are entitled to an evidentiary hearing. Petitioner asserts that his issue of ineffective assistance are not barred.

(a) Supporting facts:

Under New Jersey case law, petitioners are rarely barred from raising ineffective assistance of counsel claims on post conviction review. Such claims may fall within R.3:22·4(c), which affords post conviction review for constitutional claims that could have been raised earlier, because those claims are grounded in the Sixth Amendment and the New Jersey Constitution. Ineffective assistance of counsel claims are particularly suited for post conviction review because they often can not reasonable be raised in a prior proceeding.

Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involved allegations and evidence that lie outside the trial record. Petitioner was sentenced April 13, 2012 and his motion for post-conviction relief was filed March 28, 2016, well within the Five year period as set forth by Rule-3:22 et seg. If Petitioner's ineffective-assistance-of-counsel claims warrant an evidentiary hearing. Evidentiary hearing in post conviction relief motions are not required, R 3:22-1, however, the trial court has judicial discretion to conduct evidentiary hearing. Since ineffective-assistance-of-counsel claims cannot be developed on direct appeal, trial courts should grant an evidentiary hearing to resolve ineffective assistance claims when a prima facie claim is made in the petition. To establish a prima facie claim of ineffective assistance of counsel, Petition must establish a reasonable likelihood of succeeding under the test set forth in Strickland v. Washington.

Ground Six:

Mr. Singer is entitled to an evidentiary hearing on his ~~dop~~ claim that his attorneys rendered ineffective assistance of counsel By failing to investigate and present an adequate Alibi defense or Raise these issues on direct Appeal.

Supporting facts:

Mr. Singer petitioned for past conviction relief based on counsel's ineffective assistance for failing to investigate and present an adequate Alibi defense and appellate Counsel's failures to raise these issues on direct appeal. On the record below, Mr Singer made out a prima facie case of ineffective assistance of counsel. Further, his overall claim is dependant

or evidence outside of the record, namely, testimony from his attorneys and alibi witnesses. As a result, the lower court should have held an evidentiary hearing on his ineffectiveness claim. Here, Mr. Singer gave counsel a written request to interview and call at least five witnesses who would support his alibi defense, but counsel failed to investigate these leads. In addition, on May 1, 2010, he asked the court to direct counsel to obtain a video tape that would show that he was with alibi witnesses and away from Ten's Enough Club at the time of the shooting. Moreover Appellate counsel did not raise these issues on direct appeal. Despite this record, the PCR court denied relief, finding that Mr. Singer did not explain what counsel failed to do or, in light of many witnesses called by the state and defense, how it would have made a difference. The PCR court also opined that appellate counsel could not have been ineffective as to these issues because trial counsel was not ineffective. However, Mr. Singer adequately showed what counsel failed to do by providing specific names. Moreover, the record supports Mr. Singer's claim that a stronger alibi defense was viable, but counsel failed to present additional evidence to support it.

<u>Ground Seven</u>:
Petitioner was deprived of his Constitutional Rights to the Effective Assistance of trial counsel, Contrary to petitioner's U.S. Const. 6th Amendment Rights.

<u>Supporting facts</u>:
Petitioner's prior legal representation failed gravely to subpoena the following witnesses for the crucial and vital aiding of petitioner's

defense and the deprivation of the testimony from being heard by these listed witnesses, whom could have not only factual dispute the state's theory but high light the various inconsistency of the state's case in chief (especially its alleged witnesses) Moreso, Trial Counsel render Remedial Ineffective Assistance of counsel, contrary to the <u>U.S. Const. 6th Amendment</u>, in not investigating and pursuing the written request petitioner gave counsel to interview and call the following individual:

Chibozo Chukunia;
Ann Marie Pettigrew;
Jame Spurgeon;
Nicole Davis;
Will Pitts;

<u>Grounds eight</u>:

The prosecutor's Misconduct was Clearly a Brady Violation in not sharing Crucial/Vital Evidence with Petitioner's Defense Team of the WaWa Convience Store, Contrary to Petitioner's U.S. Const. 14th Amendment Rights and 6th Amendment Rights to A Fundamental Fair Trial With Due Process/Equal Protection Rights, shielding ANY Deprivation, to the Contrary.

<u>Supporting Facts</u>:

WaWa Convience Store had a Surveillance Tape in Dayton, New Jersey and it was allegedly provided to the Prosecutor's office of Somerset County, in respect to the instant case. This tape was not provided to defense, <u>i.e. Alibi</u>. Defense requested a copy of this WaWa Convience Store Surveillance Tape, only to be notified by the prosecutor's office that the tape was allegedly <u>BLANK</u>. See RPC. 3.8 (d) "Special Responsibilities of a Prosecutor" where a timely disclosure to defense of all evidence known to prosecutor; not the case with WaWa

convience store TAPE, in the instant case. Petitioner was deprived the fundamental Cross Examination Clause and Confrontation Clause of various "testimonial and "physicall evidence" that could have been derived from the break-down of the WaWa Convience Store Tape, by petitioner's defense team. Furthermore, pursuant to R 3:13-3(C), the prosecutor suppose to turn over discovery 14 days after the return/unsealing of the indictment, to the Criminal Division Managers office or make same available to defense counsel, not the case with the WaWa Convience Store Tape

Ground Nine:
Petitioner Grand Jury indictment failed to alleged All Essential Elements of the charged Criminal Wrongs that hindered an effective defense against The Allegations Contrary to Petitioner's State and Federal Constitutional Rights, As the Judicial Abuse In nonmandate Statutory Compliance. With (Indictment Number 10-03-00168-I)

Supporting Facts:
Petitioner assert that the New Jersey State Constitution Art. I, Para 1, 9, and 10, and the United State Constitution, 6th and 14th Amendments mandate that petitioner be legally and officially informed of all the charges he's to face/answer to in a court of law, with all procedural DUE Process/Equal Protection Rights, as Substantive DUE Process/Equal Protection Rights, affored. This indictment is void of any conspiracy to commit murder.

Ground Ten
Appellant's Remedial Assistance of counsel at the trial Lead to a grave Denial of the U.S. Const. 6th Amendment and N.J. Const. Art. 1, Para 9 & 10, to a

fair trial to prove his actual innocence.

Supporting Facts:

Appellant at bar in indictment number 10-03-0168, was the only individual indicated to N.J.S.A 2C.5-2, and only individual charged with a conspiracy. Moreso, appellant should not legally have been convicted of conspiring with persons who were not known to the Grand Jury unless those persons WERE named in the indictment as co-conspirators; i.e., N.J. Const. Art. 1 Para. 8, here, its very clear that:
"No person shall be held to answer for a criminal offense, "unless on the presentment or indictment of a Grand Jury."

Ground Eleven:

Trial Counsel Rendered Incompetence In the Gross Failure To File For And Oppose Respondent Consolidation Motion Verses As Well Moving For Severance To Rid Potential Prejudice Upon/Against Petitioner, Such As Other Crime Evidence, Contrary To N.J.R.E 404 (B)

Supporting Facts:

There are two kinds of prejudicial joinder:
1.) First, there is prejudicial joinder of offense for trial; e.g. a single
2.) Second, there is prejudicial joinder of defendants for trial

Trial counsel moved for neither, especially given the fact that he was pursuing a all-or-nothing defense-case, as an Alibi, because defendant was not on the scene of the shooting on the day in question. (PTM 7-13 to 19); (PTM 12-3 to 9)
Yet, in the exact same breath, counsel indicate that petitioner case is not an all-or-nothing case.
(PTM 7.24 to 25)
In the meantime crucial and vital Pre-trial

motion was incompetent neglected and petitioner was gravely prejudice by it, where failure to file prior to trial is considered a waiver. Petitioner at bar facing the serious charges before the court was not in any position to waver any fundamental State and Federal Constitutional Rights. But counsel never discussed this matter with petitioner. Where evidence establishes that multiple seperate offense are linked as part of the same transaction or series of transactions, a court should grant a motion for severance; only if defendant satisfies the court, that prejudice would result if the severance was not granted. Petitioner at bar never had his legal choice because counsel un-beknown to him, waiver this right by having a not-so sound trial strategy on this topic. Moreover and just as important, counsel in the instant case performance was not adequate legal representation to shield petitioner from (other crime evidence), that should not have been if counsel filed the severance motion of offense. Its not questionable that petitioner was prejudice at trial with Indictment Number — 10-03-00168-I (P. App. 3 to 5) being tried at the same exact time. Petitioner was prejudice by other crimes evidence without going through the N.J.R.E 404(B) legal procedures.

Ground Twelve:

Appellant's initial Appellate counsel and PLR counsel remedial assistance of counsel as well Denial Appellant the right to Fairly And Adequately challenge the criminal Allegations to prove His Actual Innocence contrary to the U.S. Const. 6TH AMENDMENT and N.J. Const. ART. 1, 9 And 10th

Supporting Facts:

Appellant Counsel and PLR counsel rendering remedial assistance of counsel placed Appellant in a binding

situation where procedural default on some of Appellant's meritorious constitutional claims, can not be held to be a waiver because appellant never consented to same. Appellant U.S. Const - 6th Amendment Rights to Effective Assistance of Counsel, lead appellant to always believe that his Appellants Counsel and PCR Counsel, presumably is well trained and skilled litigators who possess, or at the very least ought to be charged with, detailed Knowledge of the governing statutes, Case-Law that covers conspiracy doctrine in the state of New Jersey. Which, with insufficient evidence, appellant was yet still convicted and still maintain his actual innocence. Appellant make clear he never "deliberately bypassed" i.e., personally, knowingly, and intelligently waived any meritorious claims at trial or in some other state proceeding. Appellate Counsel should have raised meritorious claims that demonstrated trial counsel remedial assistance, but this was failed; PCR Counsel supposely capture all from the trial and appeal counsel that was neglected and raise effective arguments. A New Jersey citizen was denied their U.S. Const. 1st. Amendment Rights To Witnessing Appellant To Have A Fair Public Trial, Where The Public Citizen of New Jersey Would continue To Maintain confidence and integrity in THE Judicial SYSTEM Process.


Supporting Facts:
It's clear that the Public Trials are protected by the U.S. Const 1st Amendment, where the Public New Jersey Citizen supposely be able to have an opportunity to witness their State Judicial System in/at work, if you will, to maintain confidence and integrity in the Judicial process, when their tax paying dollars is funding the system and salary of the employees running the system.

In case at bar where appellant was not afforded a fundamental fair opportunity to defend against the criminal allegations to prove his actual innocence Even the trial judge seem to not be fully in compliance with the law (3T97-3 to 9) accord in State v. Henderson, 208 N.J. 208, 285-93 (2011), that the public conede must apply to Appellant at bar because appellant case was working its way through the Judicial system process. Prospective hinderance to appellant's case in the instant matter is not only un constitutional because this conflict with the Supreme Court of New Jersey, whom made the New Jersey Attorney General's office to create the Guidelines in the first place. Moreover, contrary to the Judge's opioion that it is just a system the New Jersey Attorney General office just came up with - (3T97-10 to 13) and seems that if not followed, its ok and not a violation nor a tainted process. Its law that must/have to be compiled with and this was not affored to Appellant at bar because trial counsel was ineffective in pursuing it more aggressive on appellants behalf. In conclusion, the violation carry over to New Jersey Public, Citizens, whom have the right in making sure the State Statutes, State Case law and State Constitution are being followed to ensure a fair and public with integrity in the Fundamental process, affording Due process and Equal protection Rights to all Citizens facing prosecution in the great state of New Jersey. In Apprendi v. New Jersey here, this case is a perfect example of New Jersey Judicial System (the Judge) going contrary to the State and Federal Constitutions, as Apprendi Counsels not bing aggressive enough to pursue the matter, as the prosecutorial misconduct, all these are interwine in the Apprendi final and last ruling at the moment as we know it to be law of the land.

<u>Ground 14th :</u>

Prosecutor knowingly used Perjured testimony to obtain conviction Denying Defendant's Right to a fair trial, Due process and in violation of the 5th Amendment to THE United STATES Constitution.

<u>Supporting Facts :</u>

Though a witness for the prosecution; Said Kendrick (who was supposed to be a co-defendant) testified that he knew of no plan to kill the victim, did not have an agreement with the petitioner but was still allowed to plead guilty to conspiracy to commit murder as the petitioner's codefendant. At trial, all he could testify to was that he had given his gun (the murder weapon) to the petitioner the night before on an unrelated incident. The court gave a cautionary instruction after Said kendrick stated, "I'm really not guilty under the law of conspiracy to commit murder, but I pled guilty to conspiracy to commit Murder." In exchange for that testimony he received 10 years for conspiracy to commit murder as opposed to petitioner who received 40 years though that constitutes a conspiracy <u>was not proven</u>. Mr. kendrick was the state's star witness and his testimony itself was that was there was no conspiracy. The fact that the judge gave a limiting instruction to the jury regarding that fact was the single factor legitimizing that what was done regarding Mr. kendrick was correct though it wasn't. The jury was confused by this action and used the Judge's language to rationalize their decision to convict the petitioner on something, rather than to completely exonerate him. The jury did acquit defendant of the more serious crimes of murder and possession of a weapon. But what should have been seen as a violation of petitioner's rights under the Fifth Amendment, right to fair trial and right to due process of the law has been allowed to stand all because the jury did not understand that it was

improper for the judge to accept the guilty plea from Mr. Kendrick and Mr. Miller if the factual basis were untrue regardless of what the prosecutor wanted them to testify to. By allowing Mr. Kendrick and Mr. Miller to plead guilty with a faulty or what should have been known to be as an untrue factual basis is misconduct on the part of the prosecutor and a manifest injustice perpetrated by the court by accepting it. By allowing both said Kendrick and James Miller to plead guilty to lesser charges and without the elements required of the charges, created prejudice against the petitioner, violated his rights and was not supported by the evidence

A. Prosecutorial Misconduct

The prosecution commits an act of misconduct requiring dismissal of the indictment when he/she knowingly or intentionally subverts the process or screening from the Grand Jury reliable and credible evidence of defendant's innocence or such evidence which clearly negates an essential element of the offense charged. It is the duty of the State to disclose to a criminal defendant known favorable evidence material to guilt or punishment. The fact that the gun was given back to Mr. Kendrick on Friday instead of Sunday was argued but was clouded by the fact that the prosecution constantly referred to defendant as having the murder weapon.

B. Insufficient Evidence

The victim Michael Love was alive and well at 1:14am, as evidenced by the video footage within the club and witnesses. Those same witnesses also placed Mr. Love on the phone and this is confirmed by phone records. The applicable law, where prosecutor has alleged offense without corroborating evidence HOLD: An indictment will not be dismissed unless it is insufficient or palpably defective. Defendant contends that he was denied a fair trial and Due Process of law as the evidence

contradicts the State's Theory and was not sufficient to establish **each** and every element required by law of those crime charge. An indictment is deemed insufficient if all the elements of the alleged offense are not at least covered **before the** Grand Jury with some factual **evidence** to support the return of a true bill. Defendant cannot be put on trial for crimes not within the contemplation of the Grand Jury.

Ground **15th** :

Jury's verdict and Petitioner's conviction was against the weight of the evidence in violation of the Fourteenth Amendment

Supporting Facts:

Petitioner submits that the verdict was against the weight of the evidence as produced by the state in that:

A. The evidence fails to support a verdict of Conspiracy to Commit Murder where none of the elements required by law necessary to substantiate the charge were found, where defendant was acquitted of murder and the gun; and

B. The evidence fails to support a verdict of Conspiracy to Commit Murder where the elements required by law necessary to Substantiate the charge are not found, because the STATE'S witness testified there was no agreement between him and the defendant; and

C. Hearsay evidence elicited from non-credible witnesses without a modicum of proof denied Defendant due process and was Prosecutorial Misconduct where the prosecution knew or should have known the evidence offered was false.

"A grand jury's indictment must not be bottomed upon misconduct. A return of a true bill must be found-ed upon some evidence rationally (~~illegible~~) establ-

...ishing the State's basis for bringing charges against an accused. In the case at bar the state offered no real or substantive evidence to support a litany of charges. All of the State's proofs were circumstantial at best/or improperly admitted hearsay, violating Defendant's right to a fair trial and due process of law. The State's Star witness testified that there was no agreement between the defendant and him; therefore, the state knew that **pursuit** of a conspiracy charges was **unfound**, and **unethical**. The jury acquitted defendant of murder and possession of weapon but convicted on conspiracy to commit murder, strongly suggesting that the jurors rejected the testimony of both Said Kendrick and Jame Miller, as well as the Jailhouse informants that were presented by the State. The evidence was the State's strongest proof against defendant, though it was refuted by the State's own **witnesses**.

Ground 16 : **Judge** Failed Duty As impartial Tribunal Violating Defendant's Due Process Rights and a Fair Trial.

<u>Supporting Facts:</u>
In a criminal trial, it is the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to **Weigh** the evidence, and to draw reasonable inferences from basic facts to ultimate facts. The rule that no person, consistently with due process, may be convicted of a crime except upon <u>proof of guilt beyond a reasonable doubt</u> requires also that the fact finder will rationally apply that standard to the facts in evidence, a "reasonable doubt" being, at a minimum, one based upon "reason." A reasonable doubt" has often been described as one "based on reason which arises from the evidence **or** lack of evidence."
<u>A. Actual Killer Given Deal</u>
In the present case, defendant was convicted in despite the

lack of evidence, despite a confession by actual perpetrator, and in spite of the fact that he was in plain view on camera, at the time of Mr. Love's death, just as his alibi stated. Thus the state commits an act of misconduct by pursuing a conviction regardless of the proofs presented violating defendants constitutional rights to due process and a fair trial. The due process clause of the Federal Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond reasonable doubt. A person cannot incur the loss of liberty for a criminal offense without notice and a meaningful opportunity to defend, and such opportunity, if not the right to trial itself, presumes as well that a total want of evidence to support a charge will conclude based upon a wholly devoid of any relevant evidence of crucial element of an offense is constitutionally infirm, the most elemental of due process rights being FREEDOM from a wholly arbitrary of liberty. Constitutional Law

B. Proof of Fact

  The cell phone record analysis and video of defendant at the BP Gas Station, confirms that he was in fact in conversation with the person he claimed in his alibi to have been talking with at the victim's time of death. This was also confirmed by cell tower analysis, and through testimony from technicians from the cell phone provider. Another analysis done by the state but was never presented as it should have been was that of Detective Whipple, who retraced the route from Tens Enough to the BP Gas Station or, BP Gas Station to the Crime scene Tens Enough where defendant was seen on Video, and regardless of how fast he drove (in a police car with and without lights), could not travel the distance between the two locations in a time frame that would have allowed defendant to have been the actual shooter as state's witnesses had claimed. By withholding of that analysis and those facts the prosecution has denied exculpatory evidence from being presented, prevented the defendant from showing favorable evidence to support his defense, and thus commits an act of prosecutorial mis-

conduct. In the instant case, the conspiracy to commit murder conviction is unsustainable because the proofs offered do not establish the required elements to sustain that charge, specifically cooperation or agreement between the defendant and Mr. Kendrick. And is contradictory to Mr. Kendrick's testimony. The State's theory of the case though constantly changing or growing was that defendant shot Mr. Love in response to a jealous rage from Mr. James Miller over flirting between Mr. Love and his girlfriend. If we accept that theory **then** the proper charge should have been Passion/Provocation Manslaughter not Murder, and ignores the fact that the jury acquitted defendant of the Murder and the weapon.

<u>Constitutional error and wrongful conviction.</u>

Within the AEDPA framework, the petitioner asserts three general claims of error. First, petitioner maintains the court erred when it did not apply the principles (~~crossing~~) set forth in United States v. Agurs; Second, he maintains that the court erred when it allowed the prosecution to bolster the credibility of Mr. Kendrick and James Miller the State's star witnesses even though it was apparent from testimony that the last person to have possession of the murder weapon was Mr. Kendrick, thus rendering cross-examination prejudicial by the non-disclosure of impeachment evidence; Third, petitioner faults the court for deeming the undisclosed evidence immaterial to the jury's assessment of credibility, where possession of the weapon was the exact evidence used as a linch-pin of the prosecution case violating petitioner's due process rights and right to a fair trial. (A.) <u>The lack of Full disclosure</u>

In light of evidence in the record, there should be no question about the fact that the prosecutors purposely misled the court in regards to the materiality of possession of the weapon and that the state was aware there was no legal basis for the conspiracy charge other than the fact it was something they could construct to convict defendant. Moreover, that the prosecutor knowingly misled the court as to the materiality of the weapons possession virtually compels the conclusion that the court unreasonably determined

that the prosecution had adequately disclosed the extent to which the erroneously presented information had bolstered the State's case in securing an indictment. The non-disclosure of which rendered the proceedings void, and wholly unfair as the effect is clearly prejudicial to petitioner because of its probative value and that it was exculpatory and critical to petitioner's defense, violated due process, and raised what was a procedural error to that of a substantive error of Constitutional Magnitude.

B. The Investigating Detective Imputed Knowledge To prosecutor. As a legal matter, The U.S. Supreme Court precedent on this issue is clear. When any member of the prosecutor's team has information in his possession that is favorable to the defense, that information is imputable to the prosecutor. (explaining that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the Government's behalf in the case, including the police"); (holding that whether non-disclosure results from negligence or design, the prosecutor is responsible). In the case sub judice, within ample time to withdraw all charges the prosecutor knowingly allowed both star witnesses to provide a untrue factual basis to substantiate the conspiracy charges simply for the purpose of convicting defendant and legitimizing elements presented to the jury in order to secure the conviction in the States case against petitioner. It was clear misconduct to not disclose that the Murder weapon was last in the possession of their star witness who was actually at the scene at the time of the murder of Mr. Love and not 3.5 miles away on a cell phone in conversation as was the defendant. The State had a duty after discovering the nonexistence of any valid conspiracy charges against petitioner, to disclose the error and to dismiss the case proven to be based on perjured testimony. Giglio illustrates this point in the context of a prosecutor's negligent use of prejured testimony. There, an assistant to the prosecutor secretly promised a witness that he would avoid prosecution if he testified on the State's behalf, but did not reveal the clandestine promise to the prosecutor. Giglio, 405 U.S. at 152-53 At trial the witness denied the existence of any such promise, and the

prosecuting attorney did not correct the testimony. The Supreme court made a short shift of the argument that the prejured testimony should be overlooked because the prosecuting attorney himself did not know of the falsity (and was, at most, negligent in failing to discover the truth). "A promise made by one attorney must be attributed, for these purpose, to Goverment. I d. at 154. So also Kyles, in which the court rebuffed the States argument that an individual prosecutor could not be held accountable for evidence known only to investigators. In the instant case, not only did prosecutor know of all this exculpatory information, but reduced the charges of both Mr. Kendrick and Mr. Miller as rewards for maintaining their parts in implicating defendant in a conspiracy that they themselves testified did not exist. For purpose of the instant case, the above stated Supreme Court precedent make manifest that the knowledge of othe members of the prosecutor's team, such as the police officers and the investigating detectives imputable to the prosecutor as the final arbiter of the Goverment's obligation to ensure a fair trial, and the prosecutor's reponsibility to seek truth and justice, not merely unwarranted convictions.

C. The Materiality of the Undisclosed Evidence

It is well established that the prosecutors failure to disclose favorable information to defense constitutes a violation of the defendant's constitutional rights only if, and to the extent that, it deprives the defendant of a fundamentally fair trail. What makes the actions of this prosecution so heinous is the fact that after learning that their witnesses had lied, they proceeded to the grand jury with knowing false evidence and testimony in order to secure the indictment. The fact that detective Whipple could not successfully drive the distance between the two locations within the time frame that the state alleged the defendant to have done should have been presented to the jury in a manner that was clearer as it exonerated the defendant of the murder and had it been presented that the phone call that it is clearly seen defendant to have been engaged in at the very time of

the victim's death, coupled with the fact that Ms. Amanda Kennedy who testified that she was on the phone with Mr Love at the actual time of his death all these facts should have been enough to obliterate the state's case for conspiracy and to substantiate the defendants innocence. Indeed, a finding of condoned perjury demands the application of a more lenient standard of materiality, not simply because the knowing use of false testimony involves a prosecutorial peccadillo, "... but, more importantly because (it) involves a corruption of the truth—seeking function of the trial process.

D. The Prejudice of The Non-Disclosure.

In the present case, the prosecution intentionally run roughshod over the constitutional protection of defendant, the rules of discovery and the obligation to seek truth and justice through a fair evaluation of the evidence. That conduct demonstrated a total disregard of the prosecutor's duty as set forth by the New Jersey State Constitution and by the U.S. Supreme Court. The prosecutor's conduct was clearly and unmistakably improper, even including the court in a ruse that substantially prejudiced defendants fundamental right to have a jury fairly evaluate the merits of his defense.

E. The Prosecutorial Misconduct

The prosecutorial duty in a criminal trial is not to obtain convictions but to seek justice. Thus, it is as much his or her duty "... to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about just one Id at 88. "... so infect the trial with unfairness as to make the resulting conviction a denial of Due fiuess. The use of improper methods designed to gain a conviction based on anything but the law and the evidence in the case, violates the Due Process Clause. A pattern of prosecutorial misconduct which infects the integrity of the proceeding requires a new trial even if the misconduct"...did not substantially affect the jury's verdict. "Thus, the Federal Constitutional evaluation does not end with a finding that the prosecutor's conduct was improper, but requires an evaluation of the nature of the misconduct and the strength of the prosecutor's

case. Some misconduct may be too clearly prejudicial for a curative instruction to mitigate its effect.

In the course of this case, the prosecutor chose:

1) To knowingly use perjured testimony first with the Grand Jury to secure an indictment and to justify an arrest, then again with the trial court;

2) To withhold from the grand jury, evidence that the state's witnesses committed perjury, and withholding exculpatory evidence that would have exonerated defendant;

3) Purposely chose to violate defendant's State and Federal Constitutional Rights to Due Process and a fair trial. In the state's brief you are asked to believe that petitioner's claims should again fall on deaf ears because he is either procedurally bared or timed bared; neither of which can be true because of the nature of the issues within the claim and because of the defendant's rights have been violated.

Ground 17th:

Mr. Singer's conviction for Conspiracy to commit Murder IS Against the Weight of the Evidence.

Supporting Facts:

A court can reverse a jury's verdict as against the weight of the evidence if "it clearly and convincingly appears that there was a manifest denial of justice under the law R. 3:20 1. As Mr. Singer argued in his petition, there was no conspiracy to commit murder, so the jury's guilty verdict on this charge must fail. Here, Kendrick testified that he knew nothing about the shooting or planning a shooting, and that he was allowed to plead guilty to conspiracy to commit murder without these admissions. Similarly, Miller testified that he did not know or Love would be killed, and he pled guilty to conspiracy to commit aggravated assault, also without such an admission. (10T 6-21 to 7-19; 13-9 to 23; 16T 122-22 to 123-1; 126-22 to 127-15). Also, the jury never convicted Mr. Singer of shooting

Love . (Da. 10-11.) Thus Mr. Singer's conviction is necessarily against the weight of the evidence. The PCR court denied relief, finding that Mr Singer never stated which convictions were against the weight of the evidence (Da. 177) However, the record show not only that Mr. Singer specifically identified his conspiracy to commit murder conviction as the subject of this claim, (Da. 17-19, 61; 65-66), but also that he proved how it was against the weight of the evidence.

<u>Ground 18th</u> :
Preliminary Statement
James Miller in the instant matter, took a plea deal for conspiracy "to commit a assault"

<u>Support Facts</u> :
If a person guilty of conspiracy, as defined by subsection (a.) of this section, knows that a person with whom the conspires to commit a crime has conspired with another person or persons to commit <u>the same crime</u>, he is guilty of conspiring with such other person or persons, whether or not he knows their identity, to commit such crime.

And, he (Miller, that is) testified he did not know the object would be killed. Therefore, the prosecutorial Misconduct was the knowing use of prejury testimony; knowing the plea deal given was a reward for false testimony. Defendant - appellant concede that his conviction was against the weight of the evidence, such as; State's witness committed Perjury; Conspiracy proven not to EXIST. Moreover, the timeline, the cell-phone records of Liz Quinones cell phone virtually continuously at least 3.5 miles away from the scene of the alleged crime. Five calls in all were made, all of which hit the same cell tower. I (defendant appilant herein) was on Ms. Quinones cell-phone. Furthermore, defendant appellant concede that starting at 1:15AM, I repeatedly called my daughter's mother and spoke with her virtually continuously until 1:42AM, the last call ended at a cell-tower 6 miles from the scene of the alleged

crime. Obviously, defendant could not be in two places at once. It's also physically impossible for defendant to have been at <u>Tens Enough</u> before the shooting. As defendant previously stated, he left the BP Gas Station at 12:59 AM with Liz Quinones driving. Defendant was on the phone at 1:13:57 AM. And, the cell-tower hit for this call was consistent with a call being made from Liz Quinones' house in Highland Park, New Jersey. Which is at least 3.5 miles away from the alleged crime scene. Factly, this crucial information was determined by cell phone-experts. The evidence clearly indicates that the victim was shot between 1:07AM and 1:14AM. Moreso, this evidence comes from Amanda Kennedy, whom testified that she was on the phone with the victim, and this exact same witness stated the victim was on his phone when he was shot. This is a vital point and a gap of just under 15 min. Analyzing Detective Whipple's testimony, it takes over 15 minutes to drive from the BP Gas Station to Tens Enough and then to Highland Park, New Jersey, where defendant was located at through Liz Quinones cell phone, and cell phone records also indicated defendant at bar was on the phone the same exact time. The victim was on the phone, so if defendant was at the crime scene, their cell tower would show call being made from both phones pinging off the same cell-tower. Also, the BP Gas Station is 6 miles from the crime scene, and Liz Quinones house in Highland Park, New Jersey, is another 3.5 miles from the scene of the crime. That's a little over 9 miles altogether. Defendant was seen on video leaving the BP Gas Station at 12:59. Defendant-appellant could not have driven/drove to the crime scene and allegedly shot Mr. Love, then got to Highland Park, New Jersey at 1:13:57 and made that call, because it takes over 15 minutes just to drive from the BP Gas Station to the crime scene. Unfortunately at defendant trial, the prosecutor did his best to either ignore and/or distort this compelling exculpatory evidence. Despite having all of these cell-phones records and video tapes in its possession, pursuant to its investigation the State did not introduce any of this evidence during its case in chief.

    In conclusion, defendant-appellant submit that the prosecutor never presented no testimony to contradict the testimony of defense experts and witnesses whom corroborated the accuracy and reliability of the records. <u>Instead</u>, it relied on specious arguments and unlikely scenarios in its summation without any evidentiary support.