**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

MALIK SINGER,                                :
                                             :
        Petitioner,                 :   Civ. No. 19-12497 (GC)
                                             :
v.                                           :
                                             :
ATTORNEY GENERAL OF THE                      :   **MEMORANDUM & ORDER**
STATE OF NEW JERSEY, et al.,                 :
                                             :
        Respondents.                :
                                             :

---

**CASTNER, District Judge**

    Petitioner, Malik Singer ("Petitioner" or "Singer"), is proceeding *pro se* with an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner asserts in Claim II of his habeas petition that a witness' (Aisha Williams) identification of Petitioner as the shooter should have been suppressed because of the impermissibly suggestive identification procedure used by the police. In ultimately denying relief on this claim, the New Jersey Superior Court, Appellate Division stated as follows:

> We next consider defendant's argument attacking the trial court's failure to suppress Williams's out-of-court identification in which she identified defendant as the man who shot and killed Love. Defendant argues the identification procedure used was impermissibly and unnecessarily suggestive, resulting in a strong likelihood of misidentification. Under these circumstances, defendant argues the trial court should have found Williams's identification unreliable and inadmissible at trial. Specifically, defendant emphasizes only two photographs in the array of "arguably 'light skinned' black males," had facial tattoos. According to defendant, this rendered the entire photo array unduly suggestive.
>
> The State argues the identification procedure followed by Somerset County Sheriff's Department Officer Barbara Cole, who prepared

the array, was not unduly suggestive and was in compliance with the Attorney General's guidelines regarding the preparation of photographic lineups. The array included photographs of African–American men who were similar in appearance to defendant. The State also claims the Franklin Township Detective who showed Williams the array followed the Attorney General's guidelines as well.

We are not persuaded by defendant's arguments. The trial court conducted a hearing in response to defendant's motion challenging Williams's out-of-court identification. The motion judge found the photographic lineup was not impermissibly suggestive. He found Williams's identification of defendant reliable because she testified the police officer did not emphasize defendant's photograph in the lineup and did not pressure her in any way into making an identification. The judge reviewed the photographs used in the lineup and noted people in the photographs were "[r]emarkably similar in facial features." There was nothing to indicate defendant's picture was highlighted by the police in any fashion, or that the police made any suggestion as to which picture to select.

The judge also noted that Williams identified defendant in court as the person she saw shoot Love. She was familiar with defendant, having seen him before on several occasions. She also had an unobstructed view of the shooting. Williams saw defendant with the gun in his hand and pull the trigger. She was "positive on the identification"; in fact, "[s]he couldn't be more positive." Finally, the judge noted Williams identified defendant just two days after the shooting.

As an appellate court, we are bound to defer to the trial court's findings based on testimony presented at a hearing to determine the admissibility of a witness' identification. *State v. Adams,* 194 *N.J.* 186, 203 (2008). "[T]he trial court's findings that photographic identification procedures were reliable should not be disturbed if there is sufficient credible evidence in the record to support the findings." *Ibid.*

In order to reject an out-of-court identification, the court must find the procedures used were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247, 1253 (1968). *See also State v. Herrera,* 187 *N.J.* 493, 503 (2006). The United States Supreme Court has established procedures to ensure that identification procedures are not unduly suggestive. *See United States v. Wade,* 388 *U.S.* 218, 227–41, 87 *S.*

2

*Ct.* 1926, 1932–40, 18 *L. Ed.* 2d 1149, 1157–65 (1967). Our own Supreme Court has also followed suit. *State v. Madison,* 109 *N.J.* 223, 232 (1988). To determine the admissibility of eyewitness identifications, our Supreme Court adopted the two-prong test articulated by the United States Supreme Court in *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 *S.Ct.* 2243, 2253, 53 *L. Ed.*2d 140, 154 (1977).

The first prong requires the court to "ascertain whether the identification procedure was impermissibly suggestive[.]" *Herrera, supra,* 187 *N.J.* at 503–04. "What is being tested in the preliminary inquiry as to admissibility is whether the choice made by the witness represents his own independent recollection or whether it in fact resulted from the suggestive words or conduct of a law enforcement officer." *State v. Farrow,* 61 *N.J.* 434, 451 (1972), *cert. denied,* 410 U.S. 937, 93 S. Ct. 1396, 35 *L. Ed.* 2d 602 (1973).

Under the second prong, if the procedure is found to be impermissibly suggestive, the court must then decide whether the procedure was nevertheless reliable in light of the totality of the circumstances. The court must weigh the suggestive nature of the identification against the reliability of the identification. *State v. Romero,* 191 *N.J.* 59, 76 (2007).

Under this analytical approach, "reliability is the linchpin in determining the admissibility of identification testimony[.]" *Manson, supra,* 432 *U.S.* at 114, 97 *S.Ct.* at 2253, 53 *L. Ed.*2d at 154. In determining reliability of the identification testimony, we consider

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
>
> [*Ibid.*]

Here, the photographic lineup was set up in a manner so that the other individuals looked similar to defendant, using the criteria of race, ethnicity, hair type, facial features, gender, and eye color. The motion judge found defendant's photograph did not stand out from the other five photographs. After reviewing the photographs, the

> judge explained in detail the similarities between defendant's photograph and the five other photographs used in the lineup. The judge also noted that looking at the photograph, defendant's "two tear drop tattoos" located on the left side of his cheek looked like an ordinary blemish on a person. He emphasized that some of the other individuals in the photographs used in the lineup had similar looking blemishes. In short, the procedures employed by the police officers here were not unduly suggestive. There was no evidence that the identification made through the use of these photo arrays was tainted by any improper suggestiveness rendering the identification unreliable.

*State v. Singer*, A-5270-11T4, 2014 WL 10213245, at *12–14 (N.J. Super. Ct. App. Div. Aug. 13, 2015).

To assist this Court in analyzing this claim on federal habeas review, Respondents shall be ordered to supply this Court with the photographic lineup shown to Williams which does not appear to be part of the record currently before this Court. This Court further notes it is actively reviewing the remainder of Petitioner's claims.

Accordingly, IT IS on this 28th day of February, 2023,

ORDERED that Respondents shall file and serve a copy of the photographic lineup shown to witness Williams as referenced in Petitioner's Claim II within fourteen (14) days of the date of this Memorandum and Order; and it is further

ORDERED that the Clerk shall administratively terminate this case for purposes of docket management only; the case will be reopened once Respondents respond to this Memorandum and Order; and it is further

ORDERED that the Clerk shall serve this Memorandum and Order on Petitioner by regular U.S. mail.

_____
GEORGETTE CASTNER
United States District Judge